We'll move to our second case this morning, United States v. Bebris. All right, there's Mr. Proctor. Can you both hear me? Yes, I can. Yes, Your Honor. All right, then we can proceed. Mr. Luzak, go ahead. Thank you, Your Honor. May it please the Court, Jason Luzak for the defendant, appellant Alexander Bebris. Your Honor, the question in this case involves whether the actions of Facebook and Nick Bick fall under the Fourth Amendment. And those were the two main questions that were presented to the Court in our motion to suppress. However, the Court really didn't reach those questions. And I'd like to start by explaining why the question of Facebook acting as an agent of the government was not fully addressed by the Court, and why I believe that remanding this case is probably the appropriate remedy in order to review the nature of the cooperation between Facebook and the National Center for Missing and Exploited Children. What this case involves is the continuous monitoring of private Facebook messenger communications through cooperation between Facebook and Nick Bick. In the Ackerman case, Nick Bick was viewed as being a government entity, and that is an argument that the Court heard but did not address. And we do believe that there is enough evidence in the record to come to the same conclusion that now Justice Gorsuch came to in the Ackerman case, where he determined and held that Nick Bick had all of the powers associated with a law enforcement agency, and that even though they hold themselves out as a nonprofit organization, that they have oversight by Congress. They're able to do things that private entities and regular nonprofits are not allowed to do, so they are acting as an entity of the government. And therefore, any cooperation between them, between Facebook, could fall under the purview of Facebook acting as an agent of the government. The problem and the difficulty that the defense had in this motion hearing is that the district court issued a subpoena for a Facebook employee to appear. Two lawyers showed up on the day of the evidentiary hearing and filed a motion to quash the subpoena, and the court found that the right of confrontation does not apply at an evidentiary hearing. And we believe that that is an error on the court's part. We were seeking to examine the actual relationship between Facebook and Nick Bick, and we were barred from doing so because the court allowed a declaration to suffice for live testimony. And the problem with that is that Facebook, with their lawyers, were able to carefully word a declaration that was not subject to cross-examination, and we believe that there is good cause historically to believe that the Sixth Amendment applies at an evidentiary hearing on a suppression motion. When the framers created the— Mr. Lucek, are either of these issues decisive here? The government seems to accept, for purposes of this case, that the National Center is a governmental agency, and the Confrontation Clause argument is not decisive here because the case can be decided on the Fourth Amendment issue of whether this was a private search that the National Center exceeded. So, Your Honor, the— Yeah, and also on the question of whether there was a reasonable expectation of privacy under these circumstances, given Facebook's terms of use. So those two questions are really the pivot in this case, not the Confrontation Clause issue and not the question of the status of the National Center. And I can address both of those questions. So as to the reasonable expectation of privacy, I think it's important to note, and I take it as a concession, that neither the government nor Facebook is arguing against that issue that there is a reasonable expectation of privacy. There is some citation in the government's brief, but the district court specifically stated that there is no reasonable expectation of privacy in contraband, which we believe would eviscerate the Fourth Amendment, because the ends will always justify the means in a Fourth Amendment challenge if there is drugs or guns or something illegal that is found subject to a search. Now, as to the private search issue, our argument is a bit more nuanced than that. We did make an argument under Ackerman, but we believe that the facts are distinguishable in this case from Ackerman in a real important way because we are arguing that this was not a private search, that Facebook was conducting a search at the behest of the government. And even though it was not compelled, we believe that if we were able to explore the entirety of the issue with Facebook and not just take a conclusory affidavit, we would be able to discover enough facts to establish what the true issue is here, which is the cooperation, which is an extensive cooperation. Facebook accounts for millions of NCMEC cyber tip line reports, and when John Sheehan testified from NCMEC at the hearing, he testified to things that were in direct contradiction to things that the declaration stated from Facebook. Mr. Lusek, let me ask you a question. So what? What difference would it make if Facebook, if you had a witness from Facebook that testified? We provide notice to folks, as we do, that we're going to search private messages and search these instant messages for child pornography. Every time we find them, every time, in every 100% of the cases, we're going to look at them, and if we think they're child pornography, we're going to turn it over to law enforcement. That's what we're going to do. We're telling you right now that's what we're going to do. What difference does that make? Why does that turn a private actor into a government agent or government actor? Because there are businesses in the world, I think, that operate that way. Not with respect to just child pornography, but a whole bunch of businesses turn over illegal conduct. Take the gun industry. You have gun stores. All the time they call the ATF or they call police and say, we think we had a straw purchase. Here are the facts. Here are the facts we know, and we think it was a straw purchase. Does that turn them into a government actor, that when they ask the individual buying the gun for some additional identifying information so they could turn it over to the government, are they then acting at the direction of the United States government or of the police to become a government actor? Because, boy, what you're asking for here seems to me to have broad, broad consequences. Well, Your Honor, I understand the concern, but I think when we look at Skinner, and this is why I believe that the Confrontation Clause issue is very important in this case, is that the question of agency is one where we have to view it in light of all of the circumstances. And this is a situation where you can see some of the breadcrumbs that are here as far as pieces of evidence that we have that are in the record that establishes that there's a vast amount of cooperation. This is not just a suspicion that occurs. There's actually, we've found in response to Ackerman, Facebook started to have people actually look at these images before sending them to NCMEC in order to get over this Ackerman issue, which is the expansion of the private search. And Ackerman did not address the argument that we're making here today, which is an argument of agency and cooperation. And the confrontation issue was very critical in this case because we weren't able to explore those issues. We did attempt to work with Facebook to have them answer all of the questions that we had, and we were basically stonewalled. They submitted a carefully worded eight-point affidavit, which was two pages long, which was conclusory, and stated that they had a business interest in doing this, which the court found to be very important. But I would point out that when we're looking at Skinner and some of the other cases, it's not just a question. There can be a dual purpose. So a private entity can have a purpose of a business reason for doing something, but they can also be cooperating with the government in such a way that makes them an agent. And I think that the concern that you have is something that can be narrowed and limited with the factual scenario in this case. But that's not really true because what you're saying, you don't have any evidence here that Nick or the Green Bay Police Department or any police department called and said, you know what, we want you, Facebook, we want you to view all the text messages from this fellow named Alexander Bebris, every one of them. We want you to do that. That's far different than if Facebook says we're going to just look for criminal conduct and then we're going to turn it over to the government because if that's all you're establishing, then you would establish that any business that turns over illegal conduct, what about a business in a high crime area that calls the police when they see perhaps drug dealing going on in the corner or some type of illegal activity because they want to protect their grocery store or whatever it is. Under your, no matter what the facts are, you would argue that they become a general agent of the government and therefore everything they do is subject to the Fourth Amendment. And I don't, how can that be the law? Well, your honor, this is a very factual specific issue related to Facebook because this is akin to a general warrant. This is akin to the government through Nick Mick providing training, providing the tools to do continuous full scale investigations. Police departments do that all the time. I see these ads in the paper about this night out against crime and police departments all the time meet with private businesses and tell them this is how you can detect fraud. This is how you can detect identity theft. This is how you can detect potential child exploitation. Whatever the subject is, law enforcement works with private entities to help those private entities. Think about the child exploitation area. Police do that all the time. The FBI does that all the time. Here's how a business can, here are the questions to ask. Here are the questions to ask to determine whether or not this person is being trafficked. What's wrong with that? Well, there's nothing wrong with it, your honor, but the question is whether the level of cooperation creates an agency relationship. And that is the question that we were not able to fully explore because we were not able to cross examine someone from Facebook. But you could have explored it with Nick Mick and maybe you did. Couldn't you have asked them, look, did you ever ask Facebook, maybe you didn't ask this question, maybe you did, but did you ever ask Facebook specifically to look at the text messages and the Instagram messages and the Facebook posts of Alexander Bibras? Because if Nick Mick said, yes, we actually, we identified that man and we called Facebook and said, you know, do us a favor here, look at every single one of his text messages, then maybe I think you've got something. But nobody from Nick Mick testified to that, did they? No, but we did have testimony, your honor, about the relationship between these two entities. And I think that's more important then because it brings it under something that the framers found to be even worse than what you're discussing, which is a direct point of contact and saying we want to investigate this particular person. They are doing this on a wide scale. They're doing this to everybody. And so that's our argument is that the relationship between the two entities creates an agency relationship. I would like to reserve my remaining two minutes for rebuttal. That's fine. Thank you. Mr. Proctor. Thank you, your honors. Benjamin Proctor for the United States. I want to touch on what Judge Kirsch had just mentioned, is that there's several factors that this court and other circuit courts have set forward that determine whether or not a private party is acting as a government agent in certain circumstances. As this court said in United States v. Conan, United States v. Shahid, the key factor is to look at whether or not in these cases the government exercised some form of power over the private entity such that it may be said that the private entity was acting on behalf of the government and not for its own purposes. Here the record shows that neither the Winnebago County Sheriff's Office or NCMEC had any contact with Facebook about Mr. Bieber's accounts prior to Facebook sending the cyber tips to NCMEC. There was no request by a law enforcement agency or NCMEC that Facebook search Mr. Bieber's accounts. There's no agreement for a reward from the government towards Facebook to search these accounts. There's no agency agreement. There's no agreement in which the government consented for, or Facebook consented to do something on behalf of the government, and the government said, yes, please go ahead and do this on behalf of us in searching these accounts. And looking more broadly, there's no statute or regulation that requires Facebook to conduct the searches at issue. In fact, Section 2258a sub f specifically says there is no search requirement. There is a reporting requirement where an electronic service provider like Facebook, if they have actual knowledge of child exploitation material, they're required to report that to NCMEC. But a reporting requirement is not a search requirement, and we need to look at what was the alleged government conduct that impacts the Fourth Amendment. That would be a search. There is no search requirement in this case. Now here, the record was sufficient. The district court was able to make findings of fact based on, after testimony from NCMEC, after stipulation that came in from Microsoft regarding how photo DNA works, which is how Facebook does some of this monitoring of illegal content on its platform, and from an affidavit, actually an affidavit and a supplemental affidavit from Facebook that addressed the key points here. The district court made findings of fact that Facebook had a private business interest in conducting a search. That's probably the most important one. In addition to making findings of fact, as I mentioned, that there was no contact between law enforcement or NCMEC and Facebook regarding Mr. Bieber's accounts before Facebook sent in the cyber tips. Also, the district court made a finding of fact that Facebook, an employee at Facebook monitored and looked at the images that were flagged through the photo DNA program before sending them to NCMEC. So we don't have a situation here where there's an argument that law enforcement or NCMEC, if accepting the defendant's argument that NCMEC is a government agency, there's no argument that anybody exceeded the scope of Facebook's private search. So we don't even have to get into that. This case is resolved on the private search doctrine. And with regard to Ackerman, the defendant focuses on Ackerman. In Ackerman, yes, that court determined that NCMEC was a private entity, a government entity. But there were so many unique factors there that deemed NCMEC, according to the court, a government actor that simply do not apply to Facebook. The court focused in Ackerman on the fact that statute requires NCMEC to operate a tip line, a cyber tip line. It requires NCMEC to receive tips. It requires NCMEC to pass on those tips to law enforcement. NCMEC is focused on the funding of NCMEC being largely public, focused on special immunity privileges afforded to NCMEC under the statute. None of that applies to a private entity like Facebook. Getting back, Facebook also has, and I don't think this is a very controversial position, but Facebook has a clear business interest in trying to keep child pornography and other illegal contraband off of its website as any private business would. And here they are able to do that on a large scale through a use of this photo DNA program with regard to child pornography in order to protect its reputational business interests and to protect its customers from seeing this type of content. They wouldn't want, I think society generally, you know, perceives child pornography to be pretty reprehensible. It's not controversial that a business would not want to be associated with that type of conduct. And where in situations like this, where a private entity has its own business interests in conducting the search, it doesn't really matter what those interests are, so long as they're the private entities and it's not compelled or coerced or rewarded by the government into conducting that search. And those positions are consistent with what led the court, particularly in the United States versus Koenig and Shaheed case, to conclude that even though there was communication, say, in the Koenig case between FedEx and the DEA, there was a relationship between those two entities. DEA even helped FedEx develop a drug shipper profile. Even though there was this background when FedEx opened up a private package, found drugs and shared that with the DEA, the court found, based on the evidence in that case, that FedEx had a private business purpose in doing that. It was protecting its employees. And as a court, it could have been for anything. It could have been simply that they wanted to prosecute, they wanted to help prosecute drug dealers. But that was their own private interest. The fact that it overlapped with a government societal interest in prosecuting criminals, it didn't matter. And the same thing with the Shaheed case. In that case, where a mall security guard detained and searched a defendant in that case and held them until police arrived. That was not deemed to be government conduct, even though the local police knew that the mall security guards operate in the way that they do. They detain folks, they'll search folks, but they're doing it to protect mall stores and mall customers. And that was critical in that case. Now here, I guess the other main issue here is the district court's decision to quash Facebook subpoena. And getting back to exactly what the defendant had requested, the defendant requested a subpoena be issued to generally a representative of Facebook who has knowledge of the use of the photo DNA program and Facebook's policies and procedures regarding the search of user profiles. Now, we had a lot of testimony from NCMEC about its relationship with Facebook. We have stipulation from Microsoft regarding what photo DNA and how it is. And Facebook's affidavits hit on the key points that are critical to the determination of whether or not a private entity is a government active. And that included, again, how Facebook uses photo DNA, why they use photo DNA, what their interest, their private business interest is in monitoring content on its site for illegal materials. And that somebody reviewed those materials in this case before submitting the tips to NCMEC. The district court also knew, because the defendant presented to the court more than a hundred questions that he wanted to ask a Facebook representative. There were a couple dozen questions about Facebook's relationship with NCMEC, a couple dozen questions about photo DNA, again, whether or not Facebook employee reviewed the images at issue, Facebook's relationship with the technology coalition, other questions about Facebook's relationship with government entities. Those, as Judge Sykes pointed out, those don't go to the key issue in this case. They don't move the needle on whether or not a private entity like Facebook was operating as a governmental actor. And therefore, in the interest of judicial efficiency and not needing to take in cumulative duplicative evidence, the district court exercised its discretion and rightly quashed that subpoena. It was able to make a determination. Again, the key determination here in the private search doctrine that Facebook was operating as a private entity. And that decision is consistent with several other circuit courts around the country who have addressed nearly identical questions that have been presented. This includes the First Circuit, the Fourth Circuit, Fifth Circuit, Sixth Circuit recently in the United States versus Miller, and the Eighth Circuit in two cases, Stevenson and Ringland. And notably, the courts in Stevenson and the Fourth Circuit in Richardson addressed similar requests to the defendant in this case where instead of requesting testimony, they requested subpoenas, deuces taken for documents, but generally all about the private entity's relationship with government or NCMEC. Most courts were easily decided that that wasn't necessary in light of the affidavits that have been submitted. Your Honor, I see I haven't gotten any questions at this point. I'm happy to answer any other questions, but otherwise I yield back the rest of my time. All right, thank you very much. Mr. Lusak. Thank you, Your Honor. I'd like to address the issue of the terms of service. I would point out that there was nothing in the record. There's a citation to the terms of service and community standards. There's nothing in the record as far as evidence that was adduced at the hearing to establish that those were the community standards. So I just want to point that out to the court. I'd also like to point out on the issue of immunity, 2258 A and B, which is the reporting statute along with an immunity statute, if you read that carefully, immunity does not apply to many of the actions that Facebook states that it takes in relation to the issue of child exploitation materials. I think it's very telling that Facebook indicates that they have someone view these images. That is not something that is covered under 2258 A and B immunity, which covers the identification, which is done through a hash value, which does not require the actual viewing of the image because it communicates with, and the hash value, which is essentially a digital fingerprint, that can be forwarded on to NCMEC. And the only reason why they would have to have someone view that image is at the prompting of the government to make prosecution easier because it gets over this Ackerman issue of a private search. I would also point out that Skinner and the agency issue was not fully addressed by the lower court because we weren't able to ask questions and the questions would have moved the needle because they were specific to the agency question and the totality of the circumstances, which I believe would have established an agency relationship. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.